**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDUARD REITSHTEIN,

         Plaintiff,

   v.

NANCY A. BERRYHIL,[1]
Acting Commissioner of Social
Security,
         Defendant.

Case No. CV 16-04334 SS

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

    Eduard Reitshtein ("Plaintiff") seeks review of the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Disability Insurance Benefits and Supplemental Security Income benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On March 3, 2010, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). (Administrative Record ("AR") 22). Plaintiff alleged that he became unable to work as of February 12, 2007, due to chronic lower back pain and knee pain. (AR 701-02, 778). The Agency denied the application on December 14, 2010 (AR 48, 50) and on reconsideration on April 5, 2012. (AR 336-37). On April 14, 2012, Plaintiff requested a hearing. (AR 66). Administrative law judge, Zane Lang, conducted a hearing on August 14, 2012. (AR 773-81). On August 30, 2012, a decision was issued denying benefits. (AR 19-38). Plaintiff sought review before the Appeals Council, which was denied on March 27, 2014. (AR 731). On April 23, 2014, Plaintiff filed a complaint in federal district court (see 2:14-CV-03133-MAN ("Prior Action")), and on February 25, 2015, the parties agreed by joint stipulation to remand the case to the Commissioner for further proceedings. (See Prior Action at Dkt. No. 23). On February 8, 2016, a second hearing was held before administrative law judge, Sally Reason ("ALJ"). On March 2, 2016, the ALJ issued a decision denying benefits. (AR 648-63). On May 1, 2016, the ALJ's determination then became the Commissioner's

1  final decision.  Plaintiff filed the instant action on June 16,
2  2016.  (Dkt. No. 1).

3

4                              **III.**

5                      **FACTUAL BACKGROUND**

6

7       Plaintiff was born on August 12, 1948.  (AR 43).  On September
8  18, 2007, the alleged disability onset date, Plaintiff was 60 years
9  old.  (AR 661).  Plaintiff completed high school through the tenth
10  grade.  (AR 700).  Prior to his disability onset date, Plaintiff
11  worked as an auto mechanic.  (AR 661, 700-01).  Plaintiff maintains
12  that he suffers from chronic lower back pain and osteoarthritis in
13  the left knee.  (AR 702-03, 778; Memorandum in Support of
14  Plaintiff's Complaint ("MSP") at 5).

15

16  **A.   Plaintiff's Relevant Medical History And Physicians' Opinions**

17

18       **1.   Yami Arad, D.C.**

19

20       Dr. Arad was Plaintiff's chiropractor from December 2006 to
21  December 2008.  (AR 201-24).  Although Dr. Arad saw Plaintiff on a
22  weekly basis, (see 203, 208-09, 238, 240, 245-48), there are just
23  two treatment notes in the record.  (See AR 212, 243-44).  November
24  15, 2006, treatment notes indicated that Plaintiff was being
25  treated for pain in the L4-5 and L5-S region of the lumbar spine,
26  and November 27, 2008, treatment notes state Plaintiff's back
27  condition lasted "on and off [for] the past 15 years," although

28

during this time Plaintiff worked ten hours per day as an auto mechanic. (Id.; AR 226).

Dr. Arad filled out a number of disability reports for Plaintiff's life insurance company, stating that Plaintiff was temporarily unable to work and would be able to perform his "regular customary work" within a one to two month period. (See AR 203, 206, 208-09, 214, 232-34, 238, 240, 245-48). In these reports, Dr. Arad opined that Plaintiff's symptoms were aggravated by "repeated stooping and bending," should avoid "any lifting/bending," and should not lift more than 5 or 10 pounds. (AR 210, 216, 236). Dr. Arad recommended chiropractic treatment and physical therapy. (AR 224).

**2.   Michael S. Wallack, M.D.**

On November 30, 2010, Dr. Michael Wallack, a board certified specialist in internal medicine, saw Plaintiff for a consultative examination. (AR 316-23). During the exam, Plaintiff stated that "he has had back pain for 20 years" and took Advil and Vicodin. (AR 316). Dr. Wallack noted that Plaintiff had no surgeries or injections. (Id.). Upon examination, Plaintiff had no tenderness to palpation, muscle spasm, or evidence of scoliosis. A straight leg test was limited to 75 degrees "apparently because of tightness in [Plaintiff's] hamstrings," forward flexion was 70 degrees, extension was 15 degrees, and all other flexion/extension were normal. (AR 319). Dr. Wallack opined that there was no basis to conclude that Plaintiff had any functional limitations from

degenerative disease in his lower back and left knee. (AR 320-21).

### 3. Kaiser Permanente Woodland Hills

Plaintiff was a patient at Kaiser Permanent Woodland Hills from November 2006 to July 2012 where Dr. Emin Kuliev, M.D., was his primary care physician. (AR 262-493, 618-41). At his first appointment with Dr. Kuliev, Plaintiff appeared with medial left knee pain and was referred for x-rays and physical therapy. (AR 262). On October 15, 2007, Plaintiff noted having lower back pain. (AR 288). On January 3, 2011, Plaintiff complained of back pain that had lasted for six weeks. (AR 388). On January 3, 2011, Plaintiff had a normal heel and toe walk, normal gait with mild antalgic symptoms, and did not need assistance when moving. (AR 389). Dr. Kuliev instructed Plaintiff on weight management and exercise and referred him to a specialist to consider an epidural. (Id.).

Plaintiff received physical therapy for his lower back and left knee from January to May 2011. (AR 344-76, 491-95). During Plaintiff's first visit, he reported needing to use both legs to get out of the car. (AR 370). Upon examination, Plaintiff had a normal gait; a somewhat limited range of motion, with fingertips reaching "just above the knee" when doing a side bend; full extension with increased pain; 5 out of 5 on all strength resistance tests; a "slight increase in muscle tension on the left paraspinals;" and no lumbar spine "red flags." (AR 370, 372). On

5

March 23, 2011, Plaintiff reported that his injuries had lasted for over 20 years but "began hurting more beginning December 2010." (AR 344). Physical therapist Debra Zalmanowitz assessed that Plaintiff was "not demonstrating proper body mechanics and postures as instructed," was "not doing exercises properly, and this [was] probably why [he was] making no progress with physical therapy." (AR 345). By May 23, 2011, Plaintiff "did not return for any additional visits." (AR 493). Plaintiff's "recovery was complicated by multiple body parts, poor compliance, and infrequent visits." (Id.).

On January 3, 2011, Peter Michael Filsinger, M.D., a radiologist, performed x-rays of Plaintiff's lumbar spine and knees. Dr. Filsinger interpreted the lumbar spine x-rays to show "mild degenerative osteophytes and disc space narrowing [in the lumbar spine]. No compression fracture, spondylolisthesis or other abnormalities seen." (AR 399-400). Dr. Filsinger concluded that the x-rays showed "mild medial compartment joint space narrowing of the knees bilaterally, consistent with [degenerative joint disease]. (AR 400).

On January 10, 2011, Plaintiff saw David Haberman, M.D., regarding Plaintiff's complaints of lower back pain and right sciatica "made worse with bending." (AR 379). Dr. Haberman reviewed the January 2011 x-rays, concluding that Plaintiff had moderate L5-S1 and mild L4-5 disc degenerative changes. (Id.). Upon examination, Plaintiff was toe walking "with effort," had a normal range of motion in the upper extremities, and exhibited with

low back pain when doing a left piriformis and right hip stretch. (AR 380). Plaintiff was referred for a knee brace, which he did not obtain. (Id.).

On June 6, 2012, Louis Elperin, M.D., saw Plaintiff for back and knee pain. (AR 618-19). Plaintiff stated that his pain was better with chiropractic adjustments and hot pads for his knees. (Id.). Upon examination, Plaintiff's back was nontender, had a normal straight leg raise, had normal gait, and was able to squat and rise. (AR 619). Dr. Elperin prescribed Meloxicam[2] and recommended a geriatrics consult, but Plaintiff declined the consult. (AR 620).

On July 6, 2012, Dr. Elperin reviewed a MRI of Plaintiff's lumbar spine showing spondylosis,[3] mild to moderate stenosis[4] at L4-5, mild stenosis at L5-S, a small annulus bulge at L2-L3 and L1-L2, a small to moderate annulus bulge at L3-L4, and disc degeneration at L5-S1. (AR 641). Dr. Elperin concluded that Plaintiff had multi-level degenerative changes in the lumbar spine,

---

[2] Meloxicam is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis. https://medlineplus.gov/druginfo/meds/a601242.html#why.

[3] Spondylosis refers to a degenerative process affecting the vertebral disc and facet joints that gradually develops with age.

[4] Stenosis is a narrowing of any tubular vessel or structural passageway within the body. http://www.spinal-foundation.org/conditions/lateral-recess-stenosis-and-treatment.

bilateral subarticular zone stenosis, and foraminal narrowing.[5] (Id.).

During the course of Plaintiff's treatment at Kaiser Permanente, he went on multiple trips. On January 15, 2007, Plaintiff reported going on a three-week trip to Thailand, on a guided tour. (AR 266). On March 23, 2011, Plaintiff left "for over a month to visit his son," (AR 345), and on March 5, 2012, Plaintiff went to Costa Rica a two week trip. (AR 591).

**4. Harainian Bleeker, M.D.**

On April 8, 2008, Dr. Bleeker, a board certified orthopedic surgeon examined Plaintiff. Plaintiff reported having back trouble for the past two years with pain going down the right leg, taking Vicodin, Advil, and Tylenol for pain. (AR 479). Upon examination, Plaintiff had normal posture, gait, and range of motion; rose from a chair without difficulty; did straight leg raising at 90 degrees with a positive tripod sign; could forward flex at 60 degrees; did supine straight leg raising at 80 degrees with low back pain; and completed a normal toe walking test. (AR 480-81). Dr. Bleeker opined that Plaintiff's degenerative arthritis of the lumbar spine and both knees prevented Plaintiff from going back to "his duty" as Plaintiff described. (AR 482).

---

[5] Neuroforaminal narrowing refers to a reduction of the size of the opening in the spinal column through which the spinal nerve exits. As this opening narrows, the nerve becomes compressed, which in turn can lead to pain that radiates along the path of the nerve. http://www.spine-health.com/glossary/neuroforaminal-narrowing.

**5. Glenna Tolbert, M.D. Q.M.E.**

On June 15, 2007, Dr. Tolbert, a qualified medical examiner, evaluated Plaintiff on a consultative basis for a life insurance company. (AR 225-30). Plaintiff's chief complaints were that he had "localized pain in his back that intermittently [went] to the legs," could lift only "very light weights," and pain prevented him from sitting or standing "more than 30 minutes." (AR 227). Upon examination, Plaintiff appeared well-developed, well-nourished, and was able to ambulate independently. A neuromusculoskeletal examination revealed no gross atrophy, normal knee extension, and a negative straight leg raising test. (AR 228). Dr. Tolbert reviewed x-rays of Plaintiff's lumbar spine showing narrowing of the L4-S1 and L4-5 disc spaces and concluded that Plaintiff had a history of "lumbar sprain/strain" and "underlying lumbosacral degenerative arthritis." (AR 229). Dr. Tolbert opined that Plaintiff "may walk as tolerated; sit or stand no longer than 20 [to] 30 minutes continuously; avoid lifting no more than 10 pounds from the floor . . . and avoid climbing." (Id.).

**B. Medical Expert's Relevant Testimony**

On February 8, 2016, Dr. Anthony Francis, a medical expert and board certified orthopedist, testified at Plaintiff's second hearing before the ALJ. (AR 670). Dr. Francis assigned Plaintiff a medium to light RFC depending on the ALJ's further credibility findings. (AR 683, 695). Specifically, Dr. Francis testified that

Plaintiff was able to lift 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; climb stairs and ramps two-thirds of the day; not climb ladders, ropes, or scaffolds; stoop and bend frequently; crouch kneel, crawl, and balance occasionally; use his lower extremities to operate foot controls frequently; not work at unprotected heights, around excessive cold, or around heavy industrial vibration; and should avoid hazardous machines with moving parts. (AR 684-85).

C.    **Plaintiff's Adult Function Report**

In an August 10, 2010 adult function report, Plaintiff stated that he could not bend or lift "due to lower back pain [and] pain in [his] knees." (AR 145). Plaintiff stated that he stretched, exercised in the pool, watched television, ate, and rested. (AR 146). Plaintiff stated that he did not do household chores, prepare meals, or go shopping and drove in cars only a "short distance," (AR 147-48).

D.    **Plaintiff's Relevant Testimony**

At the first hearing on August 14, 2012, Plaintiff testified that he stopped working because his symptoms were "too painful." (AR 777). To illustrate, Plaintiff testified, "I used to go to the car [and] fall down. I can't — my knees don't hold me. When I bend over the hood the pain was cutting me there . . . The back was cutting me like a knife." (AR 777-78). Plaintiff also

1  testified that he would grocery shop twice a week with his wife,
2  drive, sometimes do chores, and do exercises in the pool.  (AR 778-
3  80).

4

5  **E.    Vocacional Expert's Relevant Testimony**

6

7      At the second hearing on February 8, 2016, vocational expert
8  ("VE") Dr. Ronald Hatakeyama testified that Plaintiff could not
9  perform his past work as an auto mechanic.  (AR 705).  The ALJ
10 asked whether an individual of the same age, education, and past
11 work history — who is limited to medium work; cannot use ropes,
12 scaffolds, ladders; can stand, walk, and sit up to 6 hours in an
13 eight-hour workday;  can frequently climb stairs and ramps, stoop,
14 and  bend; can occasionally crouch, kneel, crawl, and balance;
15 avoid height, excessive cold, heavy industrial vibration, and heavy
16 moving machinery; and can operate foot controls two-thirds of the
17 day — perform any work that exists in significant numbers in the
18 national economy.  (AR 704).

19

20     The VE opined that Plaintiff could perform the jobs of kitchen
21 helper DOT 318.687-010 (medium unskilled, 7,000 jobs in the
22 regional economy) and linen room attendant DOT 222.387-030 (medium
23 unskilled, 1,000 jobs in the regional economy).  (AR 707).  The
24 ALJ did not question the VE regarding any apparent conflict between
25 these job descriptions under the DOT and Plaintiff's RFC.  (See AR
26 707-08).

27

28

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See 20 C.F.R. §§ 404.1520, 416.920; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

In between steps three and four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 CFR 416.920(e). To determine the claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 CFR § 416.1545(a)(2).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. "Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry." Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational

expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 663). At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2012, and Plaintiff had not engaged in substantial gainful activity since February 12, 2007, his alleged onset date. (AR 654). At step two, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of the bilateral knees and degenerative disc disease of the lumbar spine. (<u>Id.</u>). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart Part P, Appendix 1 (20 C.F.R. §§ 404.1520(d),404.1525, 404.1526, 416.920(d), 416.925-26). (AR 655).

The ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) with the limitations of not climbing stairs; frequently stooping and bending; occasionally crouching, kneeling, crawling, and balancing; frequently operating foot controls; not working at unprotected heights or around excessive cold; and avoiding heavy industrial vibration and heavy machinery. (<u>Id.</u>).

14

In making this finding, the ALJ gave "little weight" to Dr. Tolbert's RFC assessment. The ALJ found that, although Dr. Tolbert assigned Plaintiff a sedentary functional capacity, (see AR 229, 690), (1) "Dr. Tolbert's examination of the claimant was largely unremarkable and objective abnormalities were minimal; (2) the medical evidence of record show[ed] little treatment and minor abnormalities only;" (3) the limitations that Dr. Tolbert assigned Plaintiff, particularly the limitation that Plaintiff could not sit or stand for 20 to 30 minutes at a time, was based on Plaintiff's subjective complaints; and (3) Dr. Tolbert was "not a treating source and ha[d] no longitudinal knowledge of the claimant's conditions." (AR 660). The ALJ gave "significant weight" to the opinion of medical expert, Dr. Francis, who assessed Plaintiff with a medium RFC, (see AR 684), because Dr. Francis's opinion was "well-supported by the objective evidence, as well as the record as a whole." (AR 659-60). The ALJ gave Dr. Arad's opinion that Plaintiff "cannot lift more than 5 or 10 pounds" little weight because it was "not supported by the objective evidence or the record as a whole," but the ALJ gave significant weight to Dr. Arad's opinion that Plaintiff "cannot engage in regular stooping or bending . . . " (AR 658).

The ALJ found Plaintiff's testimony regarding the intensity, persistence, and limiting effect of his symptoms "not entirely credible" and provided five reasons in support of her credibility findings: (1) Plaintiff's testimony was "not fully supported by or consistent with the medical evidence of record" because "objective findings during the period of adjudication were fairly minimal" and

"[f]indings upon physical examination were also minimal;" (2) Plaintiff made inconsistent statements regarding the disabling effect of his symptoms and the length of time in which Plaintiff suffered from lower back pain, including testimony regarding daily activities; (3) traveled abroad from May to August 2010 and travelled for two weeks to Costa Rica, despite complaining of disabling symptoms; (4) failed to follow prescribed treatment; and (5) did not take particularly strong pain medication. (AR 657-58).

At step four, the ALJ determined that Plaintiff could not perform his past relevant work. (AR 661). At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (AR 662-63). According to the VE, Plaintiff was able perform the jobs of kitchen helper and linen room attendant. (Id.). Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by 20 C.F.R. §§ 404.1520(g). (AR 663).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th

Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citation omitted). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.) (citations omitted). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

## VII.

### DISCUSSION

Plaintiff asserts the following four claims: the ALJ (1) did not provide clear and convincing reasons to reject Plaintiff's testimony regarding the severity and persistence of his pain, (MSP at 4-9); (2) failed at step five to show that jobs exist in significant numbers that Plaintiff can perform, (id. at 11-14); (3) did not give specific and legitimate reasons to reject the opinion of examining physician, Dr. Tolbert (id. at 14-16, 18-22); and (4) improperly evaluated Dr. Arad's opinion, (id. at 17-18). For the reasons discussed below, the Court AFFIRMS the ALJ's decision.

**A.  The ALJ Articulated Clear And Convincing Reasons To Find Plaintiff's Testimony Less Than Credible**

Plaintiff claims that the ALJ failed to articulate clear and convincing reasons to find Plaintiff's pain testimony "less than credible" because the ALJ selectively cited to the record.  (MSP at 4-9).  The Court disagrees.

When assessing a claimant's credibility, the ALJ must engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing Vazquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)).  The ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged, and if there is, in order to reject the testimony, the ALJ must make specific credibility findings.  (Id.).  The ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

In assessing the claimant's testimony, the ALJ may consider many factors, including:

(1)  ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than

candid;

(2)    unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

(3)    the claimant's daily activities.

Smolen, 80 F.3d at 1284. Additionally, the ALJ may discredit the claimant's testimony where his normal daily activities can transfer to the work setting. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

As discussed above, the ALJ's decision reflected five grounds to reject Plaintiff's credibility. (AR 657-58). The Court finds that these grounds are supported by substantial evidence in the record and are clear and convincing grounds to reject Plaintiff's testimony.

First, the ALJ properly found that Plaintiff's pain testimony was "not fully supported by or consistent with the medical evidence of record" because "objective findings during the period of adjudication were fairly minimal." (AR 657). The ALJ then cited physical examinations, a MRI, and x-rays of Plaintiff, which rendered somewhat normal findings. (Id.). Such objective medical evidence is relevant to an ALJ's credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (holding that "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective evidence,

the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

Specifically, Plaintiff claimed that he was unable to do any lifting or bending, but examinations conducted by Dr. Kuliev, Dr. Wallack, Dr. Bleeker, Dr. Tolbert, and Plaintiff's physical therapist routinely showed that Plaintiff had a normal straight leg raise test, normal heel-to-toe walk, normal flexion and extension, normal gait with mild antalgic symptoms, minimal tenderness to palpation, and no lumbar spine "red flags." (AR 228, 316, 319, 370-72, 388-89, 482). Plaintiff also stated that he was unable to prepare his own meals, do household chores, or go shopping, (see AR 147-48). However, during examinations, Plaintiff sat and stood with normal posture, rose from a chair normally, could squat, and received a 5 out of 5 on all strength resistance tests. (AR 319, 372, 619).

Moreover, x-rays from 2011 and a MRI from 2012 showed minimal to moderate conditions that would not reasonably lead to the severe functional limitations that Plaintiff alleges. Plaintiff's January 2011 x-ray of the knees showed "mild medial compartment joint space narrowing" bilaterally, and an x-ray of the lumbar spine showed "mild degenerative osteophytes and disc space narrowing." (AR 399-400). A 2012 MRI showed degenerative changes in the lumbar spine, "most prominent at [the] L4-5 level, with moderate thecal sac stenosis," central disc extrusion, bilateral subarticular zone stenosis, and foraminal stenosis. (AR 635). The ALJ referenced the 2012 MRI, stating that it showed "some mild o[s]teophytes and

disc space narrowing, but no compression fracture, spondylolisthesis or other abnormalities." (AR 657). Accordingly, the above objective medical evidence supports the ALJ's finding that Plaintiff's pain testimony was not fully credible.

Second, the ALJ gave a detailed explanation demonstrating that Plaintiff made inconsistent statements regarding his daily activities and the length of time that he suffered from a back condition. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ's detailed explanation of Plaintiff's inconsistent statements was supported by substantial evidence). To illustrate, the ALJ cited Plaintiff's adult function report, which stated that Plaintiff did nothing other than eat, nap, exercise in the pool, and watch television. (AR 657). Plaintiff also stated that he did not do chores, go shopping, or prepare meals for himself. (AR 147-48). However, Plaintiff testified that he was able to take care of his personal needs, do household chores, and go shopping with his wife. (AR 780). Similarly, Plaintiff has made inconsistent statements regarding his back condition, stating that it has lasted for 20 years, lasted "on and off" for 15 years, lasted for 20 years but got worse in December 2010, but later said the pain lasted for about six weeks. (AR 212, 243-44, 288, 316, 344, 388). Accordingly, the ALJ's finding that Plaintiff made inconsistent statements regarding the nature of his symptoms is supported by substantial evidence.

Third, the ALJ properly found that Plaintiff's travel abroad undermined his statements regarding debilitating pain. (AR 657).

Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ gave clear and convincing reason to doubt claimant's testimony about the extent of his pain and limitations based on Plaintiff's ability to travel to Venezuela). Plaintiff testified that his conditions made it difficult to get in and out of cars, left the house only two times a day, and relied on his wife for his personal needs. (AR 147-48, 778-78). However, during the relevant time period, Plaintiff went on a month-long trip and a separate two-week trip to Costa Rica. (AR 345, 591).[6] Based on Plaintiff's travel, the ALJ properly inferred that Plaintiff was not as limited as he claimed to be.

Fourth, the ALJ properly found that Plaintiff did not follow prescribed treatment. An ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Molina, 674 F.3d at 1113 (quoting Tommasetti, 533 F.3d at 1039). The ALJ noted that "while physical therapy progress notes indicate the claimant improved overall, it was noted that he was not doing his exercises properly, continued to demonstrate improper body mechanics, and continued to complain of back and knee pain." (AR 658). Plaintiff's physical therapist noted that because Plaintiff did not do the exercises properly, patient did not improve as he should have, (AR 345), and Plaintiff stopped attending physical therapy sessions altogether. (See AR 493). The ALJ also determined that Plaintiff had "not followed through with recommendations from his doctors, including to get a

---

[6] In January 2007, Plaintiff went on a three-week guided trip to Thailand. (266).

knee brace." (AR 658). Indeed, Dr. Elperin recommended a geriatrics consult on June 6, 2012, which Plaintiff declined, and Dr. Haberman referred Plaintiff for a knee brace, which he did not obtain. (AR 380, 620). Accordingly, Plaintiff's failure to follow physical therapy treatment, attend medical consultations, and obtain a knee brace support the ALJ's finding that Plaintiff did not follow prescribed treatment.

Fifth, the record supports the ALJ's finding that Plaintiff took "little pain medication, which is inconsistent with his allegation of severe, debilitating pain." (AR 658). Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of pain. See Morgan, 169 F.3d at 600. Plaintiff generally took Advil and Tylenol for pain, and he sometimes took Vicodin when his pain was severe. (AR 316, 479). Dr. Kuliev also emphasized the importance of a healthy diet and exercise to mitigate Plaintiff's symptoms, (AR 389), and Plaintiff was never recommended for surgery. (AR 316). In June 2012, Plaintiff was prescribed a low dose of Meloxicam for pain, (AR 620), but Plaintiff's overall course of treatment was conservative. Thus, as the ALJ described, Plaintiff took minimal pain medications, which is a legitimate reason to reject a Plaintiff's pain testimony. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (ALJ properly found that claimant's pain testimony was not credible where conditions were treated with limited pain medication).

Plaintiff's subjective pain was not supported by the medical record and was undermined by inconsistent statements, trips abroad, failure to follow prescribed medical treatment, and conservative treatment. Accordingly, the ALJ articulated clear and convincing reasons to give less weight to Plaintiff's testimony regarding the severity and intensity of his symptoms.

**B.** **The ALJ Properly Adopted VE Testimony That Plaintiff Can Perform Jobs In Significant Numbers In The National Economy**

Plaintiff contends that (1) there was an apparent conflict between the VE's testimony that Plaintiff could perform the job of kitchen helper and the DOT; (2) the ALJ did not provide persuasive evidence to address this conflict; and (3) because Plaintiff could not perform the job of kitchen helper, the ALJ erred in finding that there were a significant number of jobs in the national economy that Plaintiff could perform. (MSP at 11-14). The Court disagrees.

At step five, "the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); see also 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(1)(v), 416.920(a)(1)(v). "[W]ork exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566(a); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1478 (9th Cir. 1989).

The DOT is the Commissioner's "primary source of reliable job information" and creates a rebuttable presumption as to a job classification. Johnson v. Shalala, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995); see also Tommasetti, 533 F.3d at 1042. An ALJ may also seek VE testimony in order to determine whether a plaintiff can perform any work. "When there is an apparent conflict between the [VE's] testimony and the DOT — for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear to be more than the claimant can handle — the ALJ is required to reconcile the inconsistency." Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (citing Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007)). An ALJ may not rely on VE testimony regarding the requirements of a particular job without first inquiring whether the VE's testimony conflicts with the DOT. Massachi, 486 F.3d at 1152-53. An ALJ's failure to inquire into an apparent conflict is harmless where there is no actual conflict between the RFC and the DOT. Massachi, 486 F.3d at 1154 n. 19); cf Rounds v. Comm'r of Social Security, 795 F.3d 1177, 1184 (9th Cir. 2015).

In order to accept VE testimony that deviates from the DOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the [VE]'s testimony." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted). If the ALJ

fails to address the contradiction, then a "gap" exists in the record, and that "gap" precludes the court from determining whether the ALJ's Decision is supported by substantial evidence. <u>Zavalin</u>, 778 F.3d at 846.

In adopting the VE's testimony, the ALJ identified two occupations, kitchen helper and linen room attendant, that Plaintiff can perform considering his age, education, and RFC. (AR 662). Plaintiff contends that he cannot perform the occupation of kitchen helper because the DOT description for kitchen helper requires frequent crouching,[7] and Plaintiff's RFC limits him to occasional crouching.[8] (MSP at 13).

Plaintiff correctly asserts that there is a conflict between Plaintiff's RFC and the DOT description for kitchen helper. The ALJ assigned Plaintiff with a medium RFC and limited him to occasional crouching. (AR 655). At the second hearing, the VE testified that Plaintiff could perform the job of kitchen helper, and the ALJ did not question the VE regarding his testimony. (See AR 707). The ALJ then adopted the VE's testimony that Plaintiff could perform the job of kitchen helper, stating it "was consistent with the information contained in the [DOT]." (AR 662). By fully adopting the VE's testimony without questioning the VE or giving

---

[7] The DOT states that the job of kitchen helper requires frequent crouching, i.e. "exists from 1/3 to 2/3 of the time." DOT 318.687-010.

[8] The DOT defines the word "occasionally" as "a condition or activity [that] exists up to 1/3 of the time." <u>See, e.g.</u>, DOT 318.687-010.

specific support from the record, the ALJ failed to provide persuasive evidence to resolve the conflict. See _Johnson_, 60 F.3d at 1435. Accordingly, the ALJ erred in finding that Plaintiff could perform the job of kitchen helper.

However, the ALJ also adopted the VE's testimony that Plaintiff could perform the job of linen room attendant, which has 1,000 positions available regionally and 50,000 positions available nationally. (AR 662). Plaintiff does not dispute that, given his RFC, he could perform the job requirements of linen room attendant. (MSP at 14). Rather, Plaintiff asserts that the occupation of linen room attendant does not exist in significant numbers in the national economy. (_Id._).

There is no "bright-line" rule in the Ninth Circuit as to what number of available jobs constitutes "significant numbers." However, courts have found it "instructive" to compare cases in this inquiry. See _Beltran v. Astrue_, 700 F.3d 386, 389 (9th Cir. 2012). The Ninth Circuit has held that 1,000 to 1,500 positions regionally is a significant number of jobs, see _Meanel v. Apfel_, 172 F.3d 1111, 1115 (9th Cir. 1999); _Barker_, 882 F.2d at 1479, and 25,000 positions nationally is a significant number of jobs, see _Gutierrez v. Comm'r of Soc. Sec._, 740 F.3d 519 (9th Cir. 2014). If _either_ the number of regional jobs _or_ the number of national jobs is found to be significant, the court must uphold the ALJ's decision. 42 U.S.C. § 423(d)(2)(A); _Beltran_, 700 F.3d at 389-90.

Here, there are 1,000 regional and 50,000 national positions available for linen room attendant. (AR 662). The 1,000 regional positions available for linen room attendant align with the 1,000 regional positions available in Meanel and Barker, and the 50,000 national positions available for linen room attendant are substantially more than the 25,000 national positions available in Gutierrez. Accordingly, there is substantial evidence to support the ALJ's finding that Plaintiff could perform other jobs in significant numbers in the national economy.

**C.** **The ALJ Gave Specific And Legitimate Reasons Supported By The Record To Reject The Opinion Of Examining Physician, Dr. Tolbert, In Favor Of Nonexamining Medical Expert, Dr. Francis**

Plaintiff contends that the ALJ did not provide sufficiently specific reasons to reject the opinion of Dr. Tolbert, an examining physician, in favor of the opinion of Dr. Francis, a nonexamining medical expert. (MSP at 15-18). Specifically, Plaintiff asserts that Dr. Tolbert's opinion was based on objective medical evidence, and Dr. Francis's opinion was too ambiguous for the ALJ to adopt in concluding that Plaintiff had a medium RFC. (Id.). The Court disagrees.

Social Security regulations require the Agency to "evaluate every medical opinion we receive," giving more weight to evidence from a claimant's treating physician. 20 C.F.R. § 404.1527(c). Where a treating or examining physician's opinion is contradicted by another doctor, the "[Commissioner] must determine credibility

and resolve the conflict." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (quoting Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995), as amended (Apr. 9, 1996) (quoting Roberts v. Shalala, 66 F.3d at 179, 184 (9th Cir. 1995)). The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies rejecting the opinion of an examining physician. Lester, 81 F.3d 821 at 831. The opinions of non-examining physicians may serve as substantial evidence when the opinions are consistent with "independent clinical findings or other evidence in the record." Thomas, 278 F.3d 947 at 957.

The ALJ gave Dr. Tolbert's opinion "little weight" because her "examination of the claimant was largely unremarkable and objective abnormalities were minimal," which supported the record as a whole because "medical evidence of record show[ed] little treatment and minor abnormalities." (AR 660). The ALJ also found that Dr. Tolbert's RFC assessment was largely based on Plaintiff's subjective complaints, "particularly [Dr. Tolbert's] statement that the claimant could not sit or stand for more than 20 to 30 minutes continuously was based entirely on the claimant's subjectively reported assessment rather than on any objective findings or clinical observations." (Id.). In contrast, the ALJ found Dr. Francis's opinion was "well-supported by the objective

evidence, as well as the record as a whole," allocating it "significant weight." (AR 660).

The ALJ properly rejected Dr. Tolbert's opinion because Tolbert's opinion contradicted her own examination findings. A contradiction between a physician's opinion and her own treatment notes constitutes a specific and legitimate reason to reject the physician's opinion. See Valentine, 574 F.3d at 692-93 (9th Cir. 2009). Although Dr. Tolbert opined that Plaintiff cannot lift more than 10 pounds and sit or stand for more than 20 to 30 minutes, Dr. Tolbert's examination findings were minimal. Specifically, Dr. Tolbert noted that Plaintiff could "independently transfer without complaint," no gross atrophy or deformity of the lumbar spine, a normal heel and toe walk, 5 out 5 knee flexion and extension bilaterally, and a "negative straight leg raise with [a] positive right tight hamstring." (AR 228). Dr. Tolbert noted that Plaintiff had "increased pain with extension and right lateral flexion." (Id.). However, some increased pain does not support Dr. Tolbert's sedentary functional capacity finding. Accordingly, the ALJ gave a specific and legitimate reason to reject Dr. Tolbert's opinion because Dr. Tolbert's own exam findings contradicted her opinion.

Moreover, the ALJ properly found that Dr. Tolbert's opinion was largely based on Plaintiff's subjective complaints. Tommasetti, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as

30

incredible."). Plaintiff stated in a questionnaire for Dr. Tolbert that he can "only lift very light weights" and pain prevents him from sitting for more than 30 minutes. (AR 227). Similarly, Dr. Tolbert opined that Plaintiff should avoid lifting more than 10 pounds and can sit or stand no longer than 20 to 30 minutes continuously. (AR 229). Plaintiff contends that Dr. Tolbert also relied on the medical record to come to her opinion, but Dr. Tolbert only cited to Dr. Arad's notes finding Plaintiff had "localized lower back pain," and Dr. Tolbert determined that other records were "illegible" or "unremarkable." (AR 228-29). Further, no other doctor opined that Plaintiff cannot sit or stand for up to 30 minutes. Accordingly, because the ALJ found Plaintiff's pain testimony not credible and Dr. Tolbert relied on Plaintiff's statements, the ALJ provided a specific and legitimate reason to reject Dr. Tolbert's opinion.

Moreover, Dr. Francis's medium RFC assessment is supported by substantial evidence in the record. A court will affirm an ALJ's RFC if it is supported by substantial evidence and the ALJ properly applies the legal standard. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); See Tommasetti, 533 F.3d at 1038 (an appellate court will only disturb the Commissioner's decision if it contains legal error or is not supported by substantial evidence). Dr. Francis opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand, sit or walk for six hours in an eight-hour workday; climb stairs and ramps two-thirds of the day; not climb ladders, ropes or scaffolds; stoop and bend frequently; crouch kneel, crawl, and balance occasionally; use his lower

extremities to operate foot controls frequently; not work at unprotected heights, around excessive cold or around heavy industrial vibration; and should avoid hazardous machines with moving parts. (AR 684-85). As discussed above, physical examinations, x-rays, and a MRI all rendered minimal medical findings. These records support Dr. Francis's opinion that Plaintiff has a medium capacity level with some limitations, placing him well within the ALJ's RFC.

Plaintiff asserts that Dr. Francis's opinion was too ambiguous as to whether he gave Plaintiff a light or medium RFC. (MSP at 18-22). Dr. Francis testified at multiple points that Plaintiff had a medium to light RFC depending on the ALJ's credibility findings, (AR 683, 696), and the ALJ found Plaintiff not credible. (See AR 656-58). The ALJ's finding that Plaintiff had a medium RFC, based on Dr. Francis's testimony, was not error.

As discussed, substantial evidence supports Dr. Francis's testimony that Plaintiff has a medium RFC. Accordingly, the ALJ gave specific and legitimate reasons for rejecting Dr. Tolbert's opinion and giving more weight to Dr. Francis's opinion.

D.   **The ALJ Properly Evaluated And Rejected Dr. Arad's Opinion**

Plaintiff asserts that the ALJ improperly evaluated Dr. Arad's opinion on three grounds: (1) the ALJ incorrectly found that Dr. Arad believed Plaintiff was precluded from repetitive stooping and bending, (2) Dr. Arad's opinion that Plaintiff cannot repetitively

bend and stoop is inconsistent with the ALJ's RFC finding that Plaintiff can frequently bend and stoop; and (3) the ALJ did not provide a germane reason to reject Dr. Arad's opinion that Plaintiff could not lift more than 5 or 10 pounds. (MSP at 17-18).

The ALJ made two findings regarding Dr. Arad. First, the ALJ gave "significant weight" to Dr. Arad's opinion that Plaintiff "cannot engage in repetitive stooping and bending [because it was] reasonable on the record . . . " (AR 658). Second, the ALJ "gave little weight" to Dr. Arad's opinion that Plaintiff cannot lift more than 5 or 10 pounds because it was "not supported by the objective evidence or the record as a whole," (id.).

1.    **The ALJ Reasonably Interpreted Dr. Arad's Opinion To Mean That Plaintiff Cannot Do Repetitive Stooping Or Bending**

In his disability reports, Dr. Arad stated that Plaintiff was precluded from "regular bending and stooping," (AR 210), unable to do "repetitive stooping and bending," (AR 216), and should "avoid any lifting/bending," (AR 236).  The ALJ reasonably interpreted Dr. Arad's treatment notes to mean that Plaintiff is precluded from "repetitive stooping or bending." (AR 658).  With regard to any ambiguity in Dr. Arad's treatment notes, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Tommasetti, 533 F.3d at 1041.  Accordingly, the ALJ did not err in giving weight to Dr. Arad's opinion that Plaintiff cannot engage in repetitive stooping and bending.

**2.    The ALJ's RFC For Plaintiff Is Not Inconsistent With Dr. Arad's Opinion That Plaintiff Cannot Engage In Repetitive Stooping And Bending**

Under Social Security Ruling ("SSR") 83-10, "'[f]requent' means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251 (1983). The Agency therefore routinely uses "frequent" to describe different physical movements associated with its category of medium work, but it does not employ the term "repetitive" in the same way. Courts have generally concluded that "frequent" and "repetitive" are not synonymous.[9] Gardner v. Astrue, 257 Fed. Appx. 28, 30 n. 5 (9th Cir. 2007); see, e.g., Gallegos v. Barnhart, 99 Fed. Appx. 222, 224 (10th Cir., 2004) ("frequent" and "repetitive" are not synonymous, and ALJ's finding that plaintiff could perform jobs requiring "frequent" reaching, handling, or fingering was not inconsistent with physician's recommendation against "repetitive" actions); LeFevers v. Comm'r, 476 Fed. Appx. 608, 611 (6th Cir. 2012) ("In ordinary nomenclature, a prohibition on 'repetitive' lifting does not preclude a capacity for 'frequent' lifting," and non-Agency doctor's use of term "repetitive" was not inconsistent with RFC for light work.").

---

[9]    The court in Gardner also found that "'repetitively' in this context appears to refer to a qualitative characteristic — i.e., how one uses his hands, or what type of motion is required - whereas 'constantly' and 'frequently' seem to describe a quantitative characteristic — i.e., how often one uses his hands in a certain manner. Under this reading, a job might require that an employee use his hands in a repetitive manner frequently, or it might require him to use his hands in a repetitive manner constantly." Gardner, 257 Fed. Appx. at 30 n. 5.

The Court therefore disagrees with Plaintiff's contention that the ALJ adopted a RFC that was inconsistent with Dr. Arad's opinion that Plaintiff cannot engage in repetitive stooping and bending. The ALJ gave weight to Dr. Arad's assessment, which did not specifically bar frequent bending and stooping. Moreover, the ALJ's hypotheticals did not require the individual to perform repetitive stooping and bending. (See AR 704-05). Accordingly, they fell within Dr. Arad's bending and stooping restriction, which the ALJ adopted.

### 3. The ALJ Gave A Reason Germane To Dr. Arad To Reject His Opinion That Plaintiff Is Limited to Lifting 5 Or 10 Pounds

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513, 404.1513. Physicians and psychologists are considered acceptable medical sources. 20 C.F.R. §§ 404.1513, 416.913(a). Medical sources classified as "other sources" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ may reject the opinion of "other sources" by giving reasons germane to each witness for doing so. Molina, 674 F.3d at 1111 (quoting Turner v. Comm'r Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)).

Dr. Arad did not qualify as a medically acceptable source because he was a chiropractor. See 20 C.F.R. § 404.1513(d)(1). The ALJ's finding that objective evidence in the record does not

support Dr. Arad's opinion that Plaintiff cannot lift more than 5 or 10 pounds is supported by reasonable inferences. Throughout her decision, the ALJ referenced objective medical evidence, such as physical exams, x-rays, and a MRI, to show that Plaintiff had a medium RFC, and to support Dr. Francis's finding that Plaintiff had a medium RFC. <u>See Molina</u>, 674 F.3d 1104 at 1112 (ALJ properly rejected physician's assistant's opinion where opinion was contradicted by other doctors' opinions). Accordingly, the ALJ gave germane reasons to reject Dr. Arad's opinion.

## VIII.

## CONCLUSION

Accordingly, IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT FURTHER IS ORDERED that the Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  May 31, 2017

```
                                    /S/
                        _____
                        SUZANNE H. SEGAL
                        UNITED STATES MAGISTRATE JUDGE
```

## NOTICE

**THIS MEMORANDUM DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**